**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| SANASTAR, INC., d/b/a WIZKID PRODUCTS a Florida Corporation, <br><br> Plaintiff, <br><br> v. <br><br> FRESH PRODUCTS LLC, an Ohio Limited Liability Company, <br><br> Defendant. | CIVIL ACTION No.: **25-cv-00418** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, SANASTAR, INC., d/b/a WIZKID PRODUCTS ("WizKid" or "Plaintiff"), a Florida corporation, by and through the undersigned, hereby files this Complaint for patent infringement against FRESH PRODUCTS LLC ("Fresh Products" or "Defendant"), an Ohio Limited Liability Company, and, in so doing, states as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1.      This is an action brought pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq.*

2.      This Court has original jurisdiction pursuant to Title 28, United States Code, Sections 1331 and 1338, as this case involves patent infringement and federal questions arising under the Constitution, laws, or treaties of the United States.

3.      At all times material hereto, WizKid had and has its principal address located in Fort Lauderdale, Florida.

4.      At all times material hereto, Fresh Products has and had its principal place of business in Perrysburg, Ohio.

5.     This action arises as a result of the infringing conduct of Defendant, which implicates interstate commerce.

6.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §§ 1391(b) and (c) because Fresh Products "resides" in this judicial district, as the term "reside" is interpreted under Chapter 87 of the United States Code, and because a substantial part of the events giving rise to the infringement claims at issue occurred within this judicial district. Venue is also appropriate pursuant to 28 U.S.C. § 1400(b), which provides, in part, that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides."

7.     All conditions precedent have been met, waived, and/or satisfied to bring this lawsuit.

**GENERAL ALLEGATIONS**

**WIZKID AND ITS INNOVATIVE PRODUCTS**

8.     WizKid is a Florida based company and the owner of the federally registered WIZKID trademark (the "WizKid Mark"), and uses said mark to market and sell its products throughout the United States.

9.     To this end, WizKid, together with its dedicated team of innovators, has been researching and developing cutting-edge sanitary and antimicrobial products for more than two decades. Since the commencement of such innovative efforts, WizKid's focus has remained on eliminating the negative connotation associated with using public restrooms by introducing products that help protect persons from the filth and grime that everyone inevitably encounters. Indeed, a core of WizKid's mission has been to develop innovative products and solutions that address issues often overlooked in a public restroom setting.

10.     Much of WizKid's vision has been borne through its Founders, Dean Stickler ("Stickler") and Jeff Crevier ("Crevier"). As an already successful businessman, Stickler grew tired of seeing a puddle of urine on the floor surrounding the urinals located in his office's bathroom, and desired to find a way to eliminate the issue. By this point, Stickler noticed that antimicrobials had become commonplace in sanitary products and envisioned a way to infuse them into a urinal mat that would be placed directly beneath a urinal.

11.     Soon thereafter, Stickler and Crevier began to work together to develop a mat that could resolve these concerns.

12.     The pair immediately undertook research and development to find a solution not only for Stickler and his office, but for men everywhere. Indeed, Crevier spent countless hours finding the perfect answer for this nasty pervasive problem.

13.     Finally, a breakthrough occurred. After two years researching different fibers, antimicrobials, types of backing, and manufacturing processes, WizKid settled on what they believed to be the perfect product: the Original Antimicrobial Mat.

14.     Eventually, a patent was obtained for the first-of-its-kind antimicrobial urinal mat, and Stickler and Crevier thereafter formed WizKid in September 2004, quickly followed by the introduction of the Original Antimicrobial Mat.

15.     Early on, WizKid had a small operation, with Crevier at the helm to actively develop improvements to the product while pioneering this brand-new market.

16.     As the market caught wind of this revolutionary product, orders began to overwhelm WizKid. This success brought a new issue, however—the need for greater space. To this end, WizKid sought a location to call its headquarters and that would fit the booming growth

WizKid was experiencing. Eventually, WizKid found its home in a warehouse located in Dalton, Georgia.

17.     Continuing its innovation, WizKid constantly researched the market to address issues it perceived as going unchecked or that had subpar solutions. However, it was not just its research that WizKid relied on—Crevier's own personal experiences also continued to drive WizKid's innovation. As such, Crevier, through WizKid, set out to eliminate what he identified as the most important issue during the development of the Original Antimicrobial Mat: the obnoxious splash-back men experience when using a urinal.

18.     Crevier noticed that, despite whichever urinal screen he came across and all of their claims to "eliminate splash-back," he would still walk away from the experience with the real potential that splash-back would soil the shoes and pants of the urinal user. To this end, Crevier envisioned a screen that not only covered the bottom of a urinal, but extended up the backwall of the urinal to completely eliminate the grotesque splash-back. Keeping in line with that vision, WizKid expanded its product line by introducing the innovative and revolutionary Splash Hog Vertical Urinal Screen ("Splash Hog") in 2016, which became available for public purchase in early 2017.

19.     The revolutionary Splash Hog was designed to fit the length of the urinal, included a portion that extended up the back of the urinal, while simultaneously including an attached base which covered the bottom, flat part of the urinal where water and waste collect. Additionally, the Splash Hog included longer hedge-hog like protrusions that played a crucial role—a nearly-complete elimination of splash back. With all of these features embodied in one product, someone using a urinal would rarely have to worry about a ruined experience.

20.     Crevier's innovation and tireless pursuit for success was recognized by the United States Patent and Trademark Office ("USPTO") when it issued U.S. Patent No. 10,036,154 ("the '154 Patent") on July 31, 2018. Plaintiff's innovation did not stop with this, however, as WizKid continued to improve the '154 Patent and, on May 21, 2019, was granted a second patent for the technology in U.S. Patent No. 10,294,649 ("the '649 Patent") (collectively, the "WizKid Patents").

21.     The innovative, revolutionary urinal screen provided relief and peace of mind to those who use urinals, including eliminating the worry that splash-back will ruin the user's shoes or other clothing. Not only that, the reduction of the splash back also prevents urine from contaminating the floor with an awful odor, and also prevents deterioration of the same. With that, WizKid carved out its own space in the sanitary industry with the one-of-a-kind and never-before-seen Splash Hog, and men no longer had to stress over the monotony of a public restroom visit in restrooms where the Splash Hog urinal screen was used.

22.     The innovation, dedication, and commitment to providing a pleasurable bathroom experience took nearly two decades of tireless work to turn WizKid into the success it eventually reached. In fact, WizKid's innovative Splash Hog has won numerous awards, including the 2018 and 2019 Reader's Choice Award of *Sanitary Maintenance Magazine* for Favorite Product, and the 2024 Distributor's Choice Award by *Sanitary Maintenance Magazine*.

**W<small>IZ</small>K<small>ID</small>'<small>S</small> I<small>NTELLECTUAL</small> P<small>ROPERTY</small>**

23.     WizKid is the owner of the WizKid Patents.

24.     As such, WizKid has the exclusive right to, *inter alia*, collect revenues and profits derived from the WizKid Patents, to exclude others from making, using, offering for sale, selling, or importing into the United States any goods that practice the WizKid Patents, as well as controlling all aspects of licensing the aforementioned rights.

25.     To that end, WizKid does not license any rights afforded by the WizKid Patents to any other entity.

26.     In an effort to protect its intellectual property, WizKid marks its Splash Hog with a marking imprint informing customers and potential customers of the specific patent(s) associated with the Splash Hog.



### FRESH PRODUCTS' MANUFACTURING HISTORY AND INFRINGEMENT OF THE WIZKID PATENTS

27.     Fresh Products is the largest direct competitor of WizKid, having been in the business of manufacturing and selling odor control, sanitary, and urinal screen products throughout the world since 1971.

28.     Fresh Products was not always WizKid's direct competitor, however.

29.     When the Splash Hog was first introduced, WizKid relied on manufacturers in China, which meant WizKid was forced to pay shipping and importing fees. Hoping to eliminate

those costs, and wanting to support domestic manufacturers, WizKid contacted Fresh Products to inquire on a potential manufacturing arrangement in 2015.

30.     Nearly a year later, WizKid formally engaged Fresh Products and provided instructions and designs for tooling a new mold that included the unique features Crevier developed, and which also featured a more contemporary look. This formal engagement was memorialized on or around April 20, 2016 when Fresh Products became the official contract manufacturer of the Splash Hog, and other WizKid products. *See **Exhibit 1***, 2016 Manufacturing Agreement ("2016 Manufacturing Agreement"), which is attached hereto and incorporated by reference.

31.     During the time that Fresh Products was manufacturing the Splash Hog, the USPTO issued the '154 Patent on July 31, 2018. Based on this, and desirous of a more robust manufacturing agreement, WizKid drafted a new manufacturing agreement, which WizKid and Fresh Products executed on December 1, 2018. *See **Exhibit 2***, 2018 Manufacturing Agreement ("2018 Manufacturing Agreement"), which is attached hereto and incorporated by reference.

32.     In response to the issuance of the '154 Patent and at the specific direction of WizKid, Fresh Products began marking WizKid's Splash Hog urinal screens with the '154 Patent number. This agreement persisted through the issuance of the '649 Patent, which the USPTO issued on May 21, 2019.

33.     To this end, the Parties discussed manufacturing the Splash Hog according to the '154 Patent and subsequently reduced those discussions to writing in the 2018 Manufacturing Agreement. The 2018 Manufacturing Agreement outlined the Parties' rights and obligations, and specifically included a provision that restricted Fresh Products' use of WizKid's intellectual property so that "Manufacturer may not use any of WizKid's Background Intellectual Property

Rights other than to produce and supply Products to WizKid hereunder[.]" ***Exhibit 2***, ¶ 14.1(b) (defining "Background Intellectual Property Rights" as "Intellectual Property, as applicable, except for any "Foreground Intellectual Property Rights," with "Foreground Intellectual Property Rights" defined as "any and all of the Intellectual Property Rights developed with respect to, or for incorporation into, the Products, that are either developed by WizKid alone, by WizKid and Manufacturer jointly or by Manufacturer alone as requested by WizKid in connection with this Agreement[,]" the Agreement subsequently requiring Manufacturer to "assign[] to WizKid all of Manufacturer's right, title and interest in and to all Foreground Intellectual Property Rights").

34.     At first, the Parties' relationship was one to be envied. As WizKid continued to grow, Fresh Products enjoyed the success that flowed naturally therefrom. Indeed, as WizKid saw increases in annual sales, Fresh Products saw increases in orders from WizKid. This symbiotic relationship worked for a few years, and neither party complained about any of its obligations or rights and restrictions under the Manufacturing Agreement.

35.     As time progressed, however, WizKid began experiencing several issues with Fresh Products, including, *inter alia*: (i) the quality of products received from Fresh Products began to sharply decline, (ii) Fresh Products often missed delivery deadlines, and (iii) the high costs Fresh Products charged to manufacture did not track. The culmination of these issues resulted in WizKid falling short (through no fault of its own) of its order fulfilment and delivery obligations, which caused tensions between WizKid and its customers. As a result, WizKid was forced to cut ties with Fresh Products in 2021 and began manufacturing the Splash Hog in its Dalton, GA warehouse.

36.     Thereafter, having already watched WizKid's successes from the introduction of the revolutionary Splash Hog, Fresh Products grew envious that it was now completely missing out on this market and needed a way to capture WizKid's clientele. To this end, Fresh Products

began developing a knock-off version of the Splash Hog without any warning or permission from WizKid.

37.    In 2023, Fresh Products introduced the Tsunami anti-splash device. The Tsunami *drastically* resembled the Splash Hog, even down to the most minute of details, and it became obvious that Fresh Products improperly implemented the technology protected by the WizKid Patents. In fact, in all relevant respects, the Tsunami is identical to the Splash Hog. For instance, the Tsunami copied the Splash Hog's design whereby the Tsunami extends vertically up the urinal and couples to a bottom portion that covers the area of the urinal where water and waste collect, as well as a mechanism to mount the screen to the urinal, as shown below:





38.    As is clear from the foregoing, Fresh Products enjoyed direct access to the WizKid Patents and related products as it served as WizKid's contract manufacturer. In fact, Fresh Products was WizKid's contract manufacturer *before* and *after* the '154 Patent was issued, and was the same for the '649 Patent, both patents which provided the instructions for Fresh Products to follow when manufacturing the original Splash Hog. Additionally, Fresh Products was well aware that the Splash Hog was to be marked (and actually was marked) with the '154 Patent due to its marking

9

obligations while it served as WizKid's contract manufacturer. To be clear, the only right Fresh Products had to the WizKid Patents was to make the Splash Hog specifically for WizKid. Despite this clarity, however, Fresh Products made a conscious effort to mimic its direct competitor's product by infringing the WizKid Patents and implementing the technology protected therein, in which it was already on notice.

### THE WIZKID PATENTS

39.    On July 31, 2018, the USPTO issued the '154 Patent, entitled *Urinal Anti-Splash Device*. A true and correct copy of the '154 Patent is attached hereto as ***Exhibit 3*** and incorporated by reference.

40.    The '154 Patent describes a urinal anti-splash device whereby the anti-splash device is covered in downward-tapering protrusions that extend out from the urinal screen, and is made of two portions: an upper portion that mounts to the vertical wall of the urinal, and a second portion that is coupled to the upper portion and may extend parallel or perpendicularly from the upper portion, across the bottom floor of the urinal where water and waste collect. *See **Exhibit 3***, 10:60–11:12.

41.    The '154 Patent includes three independent claims—Claim 1, Claim 11, and Claim 18—which recite:

***

> 1.  A urinal anti-splash device comprising:
> an anti-splash body sized and shaped to couple to at least
>   a portion of a urinal, the anti-splash body including:
>   a first portion;
>   a second portion opposite the first portion;
>   a length extending from the first portion to the second portion; and
>   an upper surface extending the length;
>   a base couplable to the first portion and configured to extend in a direction
>     substantially perpendicular from the first portion;

10

a first plurality of protrusions extending outwardly from the upper surface of the anti-splash body and which taper downwardly in a direction toward the upper surface of the anti-splash body;

a second plurality of protrusions extending outwardly from the base, the second plurality of protrusions configured to extend in the direction substantially perpendicular from the first portion of the anti-splash body.

***

11. A urinal anti-splash device comprising:

an anti-splash body configured to couple to a urinal wall, the anti-splash body including a first portion, a second portion opposite the first portion, and a longitudinal length separating the first portion from the second portion;

a base couplable to the first portion of the anti-splash body, the base sized and shaped to cover at least a portion of a urinal drain;

a coupling region configured to translate the base between a first position including the base oriented in a direction parallel to the anti-splash body and a second position including the base oriented in a direction substantially perpendicular from the base; and

a plurality of protrusions coupled to the anti-splash body and the base.

***

18. A method of mounting a urinal anti-splash device within a urinal comprising:

providing a urinal anti-splash device including:

an anti-splash body sized and shaped to couple to at least a portion of a urinal, the anti-splash body including:

a first portion;

a second portion opposite the first portion;

a longitudinal length extending from the firs portion to the second portion; and

an upper surface extending the longitudinal length;

a base couplable to the first portion and configured to extend in a direction substantially perpendicular from the first portion;

a coupling region disposed between the first portion of the anti-splash body and the base, the coupling region configured to allow the base to be moved from being substantially parallel to the anti-splash body in a first position to a second position substantially perpendicular to the anti-splash body;

a first plurality of protrusions extending outwardly from the upper surface of the anti-splash body; and

a second plurality of protrusions extending outwardly from the base, the second plurality of protrusions configured to extend in the direction substantially perpendicular from the first portion of the anti-splash body;

mounting the anti-splash body within a back wall of a urinal; and
placing the base over a urinal screen.

***

42.     In addition to the issuance of the '154 Patent, on May 21, 2019, the USPTO issued

the '649 Patent, entitled *Urinal Anti-Splash Device*. A true and correct copy of the '649 Patent is

attached hereto as **Exhibit 4** and incorporated by reference.

43.     The '649 Patent describes a urinal anti-splash device whereby the anti-splash device

is covered in downward-tapering protrusions that extend out from the urinal screen, and is made

of two portions: an upper portion that mounts to the vertical wall of the urinal, and a second portion

that is coupled to the upper portion and may extend parallel or perpendicularly from the base of

the upper portion. *See* **Exhibit 4**, 11:21–38.

44.     The '649 Patent also includes three independent claims—Claim 1, Claim 8, and

Claim 18—which recite:

***

1.   A urinal anti-splash device, comprising:
an anti-splash body configured to be mounted vertically on a back wall of a urinal and
        having a plurality of protrusions that extend from a front surface of the anti-
        splash body;
a base attached to the anti-splash body at a coupling region formed between the base
        and the anti-splash body, the base being configured to cover at least a portion
        of a urinal drain and having a plurality of protrusions extending away from the
        base on a surface of the base that is contiguous with the front surface of the anti-
        splash body;
the coupling region is configured allow the base to move between a first position
        including the base oriented in a direction parallel to the anti-splash body and a
        second position including the base oriented in a direction substantially
        perpendicular from the base.

***

8.   A urinal anti-splash device comprising:
an anti-splash body configured to be mounted on a back wall of a urinal, the anti-splash
        body including a plurality of protrusions extending from a front surface of the

12

anti-splash body, wherein at least some of the protrusions have a base at the front surface of the anti-splash body that is wider than a top of the protrusion at the opposite end of the protrusion; and

a base that is attached to the anti-splash body and which is configured to extend in a direction substantially perpendicular from the anti-splash body to at least partially cover a drain of a urinal, and which further includes a plurality of protrusions extending outwardly from the base which are arranged to extend in a direction substantially perpendicular to plurality of protrusions of the anti-splash body.

\*\*\*

18. A method of mounting a urinal anti-splash device within a urinal comprising: providing a urinal anti-splash device including:

an anti-splash body configured to be mounted on a back wall of a urinal, the anti-splash body including a plurality of protrusions extending from a front surface of the anti-splash body, wherein at least some of the protrusions have a base at the front surface of the anti-splash body that is wider than a top of the protrusion at the opposite end of the protrusion;

a base that is attached to the anti-splash body and which is configured to extend in a direction substantially perpendicular from the first portion to cover a drain of a urinal, and which further includes a plurality of protrusions extending outwardly from the base, the second plurality of protrusions are arranged to extend in a direction substantially perpendicular from plurality of protrusions of the anti-splash body;

mounting the anti-splash body on the back wall of a urinal; and

placing the base over a urinal drain.

\*\*\*

45.     Despite the foregoing issued patents and its unquestionable knowledge thereof, Fresh Products has willfully infringed at least claim 1 of each of said patents in an effort to unlawfully and unfairly compete with WizKid in the competitive industry.

46.     Notwithstanding Fresh Products' knowledge of the WizKid Patents from the date each was issued, WizKid delivered a Cease-and-Desist Notice to Fresh Products upon discovering its infringement. Indeed, on October 26, 2023, WizKid delivered a notice to Fresh Products outlining Fresh Products' infringement in a detailed claim chart. Fresh Products responded on November 8, 2023 and January 9, 2024. WizKid subsequently replied on March 6, 2024 and April

23, 2024 with a further breakdown of Fresh Products' infringement. Despite this, Fresh Products continues its infringement of the WizKid Patents by continuing to manufacture, distribute, and sell the Fresh Products Tsunami. *See **Exhibit 5***, WizKid Cease and Desist, and Fresh Products' Response thereto.

47.     As such, WizKid has been required to retain the undersigned counsel to pursue their interests in this matter, and is obligated to pay the undersigned a reasonable attorneys' fee for their services and to reimburse the undersigned for any costs incurred in connection with said representation.

## COUNT ONE
### INFRINGEMENT OF THE '154 PATENT

48.     WizKid re-alleges and re-asserts Paragraphs One (1) through Forty-Seven (47) of the instant Complaint as if fully set forth herein.

49.     Fresh Products has made, used, sold, offered for sale, and/or imported urinal anti-splash devices, including the infringing Tsunami anti-splash urinal screen, that practices at least claim 1 of the '154 Patent. Such unlawful conduct continues as of the filing of this Complaint.

50.     Specifically, the infringing Tsunami product meets all limitations of at least Claim 1 of the '154 Patent.

51.     As more particularly set forth above, Claim 1 of the '154 Patent recites a "urinal anti-splash device" comprising "an anti-splash body sized and shaped to couple to at least a portion of a urinal, the anti-splash body . . ."



52.     Likewise, the infringing Tsunami "includ[es]; a first portion; a second portion opposite the first portion; a length extending from the first portion to the second portion; and an upper surface extending the length;" a representative image of which is displayed below:



53.     Additionally, as required by the '154 Patent, the Tsunami contains "a base couplable to the first portion and configured to extend in a direction substantially perpendicular from the first portion;" To this end, the Tsunami includes a base couplable to the first portion, and extends substantially perpendicular therefrom.

15



54.     Claim 1 of the '154 Patent further requires "a first plurality of protrusions extending outwardly from the upper surface of the anti-splash body and which taper downwardly in a direction toward the upper surface of the anti-splash body; and a second plurality of protrusions extending outwardly from the base, the second plurality of protrusions configured to extend in the direction substantially perpendicular from the first portion of the anti-splash body." All of the foregoing elements  are contained in the infringing Tsunami product marketed and sold by Fresh Products, and as shown below.



55.     By making, using, selling, offering for sale, and/or importing into the United States

the infringing Tsunami product, Fresh Products has infringed, and continues to infringe, at least

claim 1 of the '154 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

56.     Fresh Products has knowledge of the '154 Patent at least because Fresh Products was once WizKid's contract manufacturer of the Splash Hog and enjoyed direct access to the '154 Patent, and also because of WizKid's regular and consistent marking of its own products pursuant to 35 U.S.C. § 287(a). Additionally, WizKid delivered a Cease-and-Desist demand, accompanied by a detailed claim chart, on October 26, 2023. Fresh Products responded on November 8, 2023 and January 9, 2024. WizKid subsequently replied on March 6, 2024 and April 23, 2024 with a further breakdown of Fresh Products' deliberate infringement.  Despite Fresh Products' knowledge of the '154 Patent and its infringing activities, Fresh Products has infringed, and continues to infringe, at least claim 1 of the '154 Patent by manufacturing, selling, and/or offering for sale the Fresh Products infringing Tsunami product. This intentional infringement without regard for WizKid's patent rights constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

57.     The ongoing and continuous infringement by Fresh Products of the '154 Patent entitles Plaintiff to an injunction permanently enjoining Fresh Products from further infringement of WizKid's patent rights, pursuant to 35 U.S.C.  283.

58.     WizKid has suffered, and continues to suffer, damages from Fresh Products' infringement of the '154 Patent, and WizKId is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. §§ 284 and 285.

### COUNT TWO
### INFRINGEMENT OF THE '649 PATENT

59.     WizKid re-alleges and re-asserts Paragraphs One (1) through Forty-Seven (47) of the instant Complaint as if fully set forth herein.

60.     Fresh Products has made, used, sold, offered for sale, and/or imported urinal anti-splash devices, including the infringing Tsunami anti-splash urinal screen, that practices at least claim 1 of the '649 Patent. Such unlawful conduct continues as of the filing of this Complaint.

61.     Specifically, the infringing Tsunami product meets all limitations of at least Claim 1 of the '649 Patent.

62.     As more particularly set forth above, Claim 1 of the '649 Patent requires a "urinal anti-splash device" comprising "an anti-splash body configured to be mounted vertically on a back wall of a urinal and having a plurality of protrusions that extend from a front surface of the anti-splash body;"





63. Likewise, the infringing Tsunami product contains "a base attached to the anti-splash body at a coupling region formed between the base and the anti-splash body, the base being configured to cover at least a portion of a urinal drain and having a plurality of protrusions extending away from the base on a surface of the base that is contiguous with the front surface of the anti-splash body;" as displayed below:



64. As required by the '649 Patent, the infringing Tsunami product also requires that "the coupling region is configured [to] allow the base to move between a first position including the base oriented in a direction parallel to the anti-splash body and a second position including the base oriented in a direction substantially perpendicular from the base."



65.     By making, using, selling, offering for sale, and/or importing into the United States the infringing Tsunami product, Fresh Products has infringed, and continues to infringe, at least claim 1 of the '649 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

66.     Fresh Products has knowledge of the '649 Patent at least because it was once WizKid's contract manufacturer of the Splash Hog and enjoyed direct access to the '649 Patent, and also because of WizKid's regular and consistent marking of its own products pursuant to 35 U.S.C. § 287(a). Additionally, WizKid delivered a Cease and Desist demand, accompanied by a

detailed claim chart, on October 26, 2023. Fresh Products responded on November 8, 2023 and January 9, 2024. WizKid subsequently replied on March 6, 2024 and April 23, 2024 with a further breakdown of Fresh Products' deliberate infringement. Despite Fresh Products' knowledge of the '649 Patent and its infringing activities, Fresh Products has infringed, and continues to infringe, at least claim 1 of the '649 Patent by manufacturing, selling, and/or offering for sale Fresh Products' infringing Tsunami product. This intentional infringement without regard for WizKid's patent rights constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

67.     The ongoing and continuous infringement by Fresh Products of the '649 Patent entitles WizKid to an injunction permanently enjoining Fresh Products from further infringement of WizKid's patent rights, pursuant to 35 U.S.C.  283.

68.     WizKid has suffered, and continues to suffer, damages from Fresh Products' infringement of the '649 Patent, and WizKid is entitled to compensation and other monetary relief to the extent allowed by law, pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sanastar, Inc. d/b/a WizKid Products, respectfully requests this Court to enter judgment in its favor and against Defendant, Fresh Products LLC, on all claims set forth, *supra*, and respectfully requests this Court to:

(a)  Enter judgment that Defendant has infringed, and continues to infringe, at least one claim of the '154 Patent in violation of at least one of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(b)  Award Plaintiff all available and legally permissible damages and relief sufficient to compensate Plaintiff for Defendant's infringement of the '154 Patent, including to the full

extent permitted by 35 U.S.C. § 284, together with costs, attorneys' fees and interest, in amounts to be determined at and, where appropriate, following trial;

(c)     Declare Defendant's infringement of the '154 Patent to be willful and award Plaintiff treble damages and attorneys' fees in accordance with 35 U.S.C. § 284;

(d)     Enter judgment that Defendant has infringed, and continues to infringe, at least one claim of the '649 Patent in violation of at least one of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(e)     Award Plaintiff all available and legally permissible damages and relief sufficient to compensate Plaintiff for Defendant's infringement of the '649 Patent, including to the full extent permitted by 35 U.S.C. § 284, together with costs, attorneys' fees and interest, in amounts to be determined at and, where appropriate, following trial;

(f)     Declare Defendant's infringement of the '649 Patent to be willful and award Plaintiffs treble damages and attorneys' fees in accordance with 35 U.S.C. § 284;

(g)     Immediately and permanently enjoin Defendant, under 35 U.S.C. § 283, from making, using, selling, offering for sale, and/or importing into the United States the Tsunami anti-splash device;

(h)     Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff costs, expenses, attorneys' fees, and all other recoverable disbursements in this action; and

(i)     Award Plaintiff such other and further relief as may be permitted and is appropriate at law or in equity.

### DEMAND FOR JURY TRIAL

Plaintiff, WizKid, hereby demands a trial by jury of all issues so triable as a matter of law pursuant to FED. R. CIV. P. 38(b).

Dated: March 3, 2025                     Respectfully submitted,

                                         /s/ *Mark C. Johnson*

                                         **RENNER OTTO**

                                         Mark C. Johnson (0072625)
                                         mjohnson@rennerotto.com
                                         Sarah L. Boone (0098880)
                                         sboone@rennerotto.com
                                         1621 Euclid Avenue, Floor 19
                                         Cleveland, Ohio 44115
                                         216.621.1113
                                         216.621.6165 (facsimile)

                                         *Local Counsel for Plaintiff*

                                         **THE CONCEPT LAW GROUP, P.A.**

                                         Alexander D. Brown, Esq. (*pro hac vice to be filed*)
                                         abrown@conceptlaw.com
                                         Scott D. Smiley, Esq. (*pro hac vice to be filed*)
                                         scott@conceptlaw.com
                                         Zac Davis, Esq. (*pro hac vice to be filed*)
                                         zdavis@conceptlaw.com
                                         6400 North Andrews Avenue, Suite 500
                                         Fort Lauderdale, FL 33309
                                         (t) 754-300-1500
                                         (f) 754-300-1501

                                         *Lead Counsel for Plaintiff*